UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CASE NO. 22-CR-62-KKC

UNITED STATES OF AMERICA                                            PLAINTIFF

V.         **UNITED STATES' RESPONSE TO DEFENDANT'S
           MOTION FOR A DOWNWARD VARIANCE**

CASEY SCOTT ARMSTRONG                                               DEFENDANT

\* \* \* \* \*

Casey Scott Armstrong pleaded guilty on August 1, 2022, to Count 1 of the Indictment, which charged him with Using a Minor to Engage in Sexually Explicit Conduct for the Purpose of Producing a Visual Image of that Conduct, in violation of 18 U.S.C. § 2251(a). [R. 24: Plea Agreement]. The Presentence Report calculates the Defendant's guideline range as life imprisonment. PSR ¶ 51. However, the statutory maximum for the Defendant's crime is 360 months imprisonment; therefore, the applicable guideline range is 360 months of imprisonment. The Defendant has moved the court for a downward variance. The United States objects to the motion as it believes a sentence of 360 months of imprisonment is required to achieve the sentencing objectives of 18 U.S.C. §3553(a).

A substantial sentence is necessary "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. §

3553(a)(2)(A). Armstrong's conduct was egregious. Armstrong took advantage of his position in Minor 1's life in the worst possible way. He used his relationship with, and access to, Minor 1 to perpetrate a series of sexual assaults on Minor 1. This occurred both while he was in a romantic relationship with Minor 1's mother and continued even after the conclusion of that relationship. Unimaginably, Armstrong secured Minor 1's compliance by plying her with methamphetamine, a highly addictive and damaging narcotic. Armstrong did not stop his abusive conduct with Minor 1, also providing methamphetamine and sexually assaulting Minor 1's friend, Minor 2. Armstrong compounded the seriousness of the conduct by videotaping himself engaged in the sexual assault of Minor 1. The conduct was not aberrant. To the contrary, the repeated and extensive criminal conduct occurred over a significant time and demonstrated a well-executed plan to manipulate the minor victims and those adults that cared for them in order to have access to the children.

The impact of Armstrong's crimes will be long-lasting. Armstrong's minor victims suffered significant emotional trauma. Armstrong's sexual assault of the victims and his introduction of drug use and abuse to both at such a young age, is something that will likely impact them for the rest of their lives. Particularly for Minor 1, the fact that the abuse was recorded and that these crimes were perpetrated by someone that should have loved and cared for her makes the abuse even more significant. There is also a societal harm caused by Armstrong's conduct. "As victimized children reach adulthood, they often struggle to develop healthy relationships, and to find their place in society. In this way, their burdens

are shared by all." *United States v. Faulkner*, 926 F.3d 266, 272 (6th Cir. 2019) (citations omitted).

A substantial sentence is also needed "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). "General deterrence is crucial in the child pornography context." *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010). A guideline sentence of imprisonment for 360 months would be a clear warning to others considering similar conduct. Although those who seek child sexual abuse material may be driven by compulsion, they may still be deterred by law enforcement. Learning of Armstrong's substantial sentence may reduce the abuse of children by others in this district who would consider producing or possessing such material. *See United States v. Widmer*, 511 F. App'x 506, 511-12 (6th Cir. 2013) ("sentence was necessary to send a signal to would-be offenders that receipt of child pornography carries significant consequences").

The Defendant's proffered reasons for a downward variance are not sufficient to warrant a reduction in the Defendant's guideline sentence below the recommended sentence of 360 months of imprisonment. Notably, even a sentence of 360 months is less than the recommended guideline range of life. The fact that 360 months is the maximum that may be imposed is a benefit of Armstrong's plea agreement and reflects his acceptance of responsibility. In addition, while Armstrong does not have a history of violent crime, the rape of multiple minors, one over a significant period of time, indicates the Defendant's propensity to commit violent acts against the most vulnerable. Moreover, his history of drug and alcohol abuse is not mitigating, but rather provides an increased risk of relapse and, with it, impaired decision-making. His drug use should particularly not be a reason

for a lesser sentence where he used those same controlled substances to provide to his minor victims, which both served to impair their physical responses and encourage a dependance that he could exploit.

The Defendant's criticism of the child pornography provisions of the Sentencing Guidelines also fails to provide a sound basis for a downward variance. Although a district court *may* vary based on policy disagreements with the Sentencing Guidelines, it is not required to do so. *See United States v. Brooks*, 628 F.3d 791, 799-800 (6th Cir. 2011). Where, as here, the guideline at issue is derived from congressional judgment rather than empirical analysis from the Sentencing Commission, a court deciding to vary from the guidelines is faced with the "formidable task" of explaining its rationale to set aside congressional prerogatives, and the court's decision to do so is subject to "close scrutiny" on appeal. *See United States v. Bistline*, 665 F.3d 758, 763-64 (6th Cir. 2012) (*Bistline I*) ("a district court may still disagree with the policies embodied in those directives; but to survive the close scrutiny that follows, the court must explain its disagreement in terms that are persuasive on policy grounds, not political ones."). More specifically, when a congressional directive reflects a "retributive judgment that certain crimes are reprehensible and warrant serious punishment," the court must specifically acknowledge and refute the retributive bases for the applicable guideline provision before declining to follow it. *See United States v. Bistline,* 720 F.3d 631, 633 (6th Cir. 2013) (*Blistine II*) (reversing for district court's failure to make the showing necessary to reject U.S.S.G. § 2G2.2).

4

Even in the context of the more widely criticized guideline provision for distribution, receipt, and possession of child pornography found at U.S.S.G. § 2G2.2,[1] the Sixth Circuit has mandated deference to congressional directives. *See Id*. *See also United States v. Demma,* 948 F.3d 722, 728 (6th Cir. 2020) (holding that district court's disagreements with the Guidelines failed to justify its decision to ignore enhancements).

Here, the Defendant claims to be unclear on whether U.S.S.G. § 2G2.1's recommended penalties are based on empirical analysis by the Sentencing Commission or congressional directive as in *Bistline I*. However, the Sentencing Commission has clearly explained that Congress shaped the reach of the production guideline, stating: "Congress [in the PROTECT Act of 2003] increased the mandatory minimum term of imprisonment from 10 to 15 years for production of child pornography offenses under 18 U.S.C. § 2251" and "[a]s a result, the Commission increased the base offense level at §2G2.1 from 27 to 32." *See* United States Sentencing Commission, *Federal Sentencing of Child Pornography Offenses*, available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf (last accessed on November 2, 2022). Moreover, authorities cited by the Defendant himself demonstrate that, like U.S.S.G. § 2G2.2, the production guideline exists as a creature of Congress. *See United States v. Jacob*, 631 F. Supp. 2d 1099, 1114 (N.D. Iowa 2009) ("U.S.S.G. § 2G2.1, like U.S.S.G. § 2G2.2, was not crafted pursuant to the Sentencing Commission's

---

[1] U.S.S.G. § 2G2.2 is most often subject to attack for the widespread application of enhancements for the use of a computer and the volume of images involved in the offense. Neither enhancement has been applied to this Defendant under U.S.S.G. § 2G2.1.

nationwide empirical study of criminal sentencing, but '[i]nstead […] Congress has used a mix of mandatory minimum penalty increases and directives to the Commission to change sentencing policy for sex offenses.'"). Thus, U.S.S.G. § 2G2.1 should be afforded the same deference under *Bistline I* as U.S.S.G. § 2G2.2.

Applying *Bistline I*'s standards here, there are no sound policy arguments to sidestep Congress's retributive judgment for this Defendant.  The Defendant is subject to the same base offense level as all other producers of child pornography based on Congress's determination that production of child pornography is a serious offense that warrants a lengthy term of imprisonment.  Beyond that, the Defendant is subject to enhancements that are *not* present in all production cases and that are based on conduct that undoubtedly makes this Defendant's offense more serious, including the enhancements for Minor 1's age of less than sixteen years old, the hands-on nature of the offense, the presence of sadistic or masochistic conduct, and the Defendant's role as the Minor's caretaker at the time of the offense.  It is not simply that the United States sees no grounds for sidestepping the guideline.  The Defendant himself fails to articulate any policy bases to refute congressional judgment as to these enhancements.  He simply asks the Court to reject U.S.S.G. § 2G2.1, something the Court cannot do without acknowledging and refuting the guideline's retributive underpinnings.

Accordingly, the United States respectfully requests that the Court impose a guideline sentence of 360 months.

Respectfully submitted,

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

By:   s/Mary Lauren Melton
Assistant U. S. Attorney
260 West Vine Street, Suite 300
Lexington, Kentucky 40507-1612
(859) 233-2661

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System, thus serving a copy on defense counsel.

/s/ Mary Lauren Melton
Assistant United States Attorney